


ENTERED
08/27/2020

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **BRAHMAN RESOURCE PARTNERS, LLC, *et al.*,** | § | **Case No. 20-33697** |
| | § | |
| | § | **Chapter 11** |
| **Debtors.** | § | |
| | § | **(Jointly Administered)** |

**ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF ENERGYNET.COM, LLC AS OIL AND GAS BROKER AND AUCTIONEER FOR THE DEBTORS; (II) ESTABLISHING BIDDING PROCEDURES AND NOTICE PROCEDURES; (III) SCHEDULING A SALE HEARING; AND (IV) GRANTING RELATED RELIEF**
**(Relates to Doc. No. 67)**

Upon the motion (the "**Sale Motion**")[1] of Brahman Resource Partners, LLC, *et al.*, the above-captioned debtors and debtors in possession (the "**Debtors**") for: (a) entry of an order (this "**Bidding Procedures Order**") (i) approving the retention of EnergyNet.Com, LLC ("**EnergyNet**") as oil and gas broker and auctioneer for the sale of substantially all of the Debtors' Assets; (ii) approving the bidding procedures established by the Debtors and EnergyNet as more fully set forth in the EnergyNet Agreement; (ii) approving procedures for the assumption and assignment of executory contracts and unexpired leases and proposed cure costs related thereto; (iii) scheduling bid deadline and sale hearing date; (v) approving forms of notice thereof; and (vi) granting related relief; (b) entry of a Sale Order after the Sale Hearing: (i) authorizing the Debtors to sell their Assets to the successful bidder free and clear of liens, claims and encumbrances; and (ii) authorizing the Debtors to assume and assign certain executory contracts and unexpired leases; (iii) deeming any required and (iii) granting of related relief, all as more fully described in the Sale Motion; and the Court having jurisdiction to consider the Sale Motion

[1] Capitalized terms used herein and not otherwise defined shall be given the meaning ascribed to them in the Sale Motion.

and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Sale Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O); and venue being proper in this District pursuant to 28 U.S.C. § 1408; and due and proper notice of the Sale Motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Sale Motion (the "**Bidding Procedures Hearing**"); and upon consideration of the record of the Bidding Procedures Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Sale Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing, therefore,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[2]

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. The Court has jurisdiction over this Sale Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. § 1334 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

[2] When appropriate, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact. *See* FED. R. BANKR. P. 7052.

C. The statutory predicates for the relief requested in the Sale Motion are sections 105, 327, 328, 363, 365, 503, 507 and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

D. Good and sufficient notice of the Bidding Procedures Hearing and the relief sought in the Sale Motion has been given. No other or further notice of the request for the relief granted herein need be given except as set forth herein with respect to the Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

E. At the Bidding Procedures Hearing, the Debtors articulated compelling and sound business justifications for the Court to: (i) approve the retention of EnergyNet; (ii) approve the EnergyNet agreement and Bidding Procedures set forth therein; (iii) approve the Sale Notice, Contract Notice, and Hard Consent Notice; and (iv) set a Sale Hearing date.

F. The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize recovery with respect to the sale of the Assets.

G. The process and requirements in the Bidding Procedures for participating in the EnergyNet auction process are approved as fair, reasonable, and appropriate, and are designed to maximize recoveries for the benefit of the Debtors, their estates, creditors, and other parties in interest.

H. The Debtors' proposed Sale Notice is appropriate. Service of the Sale Notice as provided for in the Sale Motion is reasonably calculated to provide all interested parties with timely and proper notice of the retention of EnergyNet, the Bidding Procedures, the auction and the Sale Hearing, and no other or further notice is required.

I. The Debtors' proposed Contract Notice is adequate and reasonably designed to provide notice to contract counterparties of the Debtors' executory contracts and unexpired leases that may be assumed and assigned.

J. The Debtors' proposed Hard Consent Notice is adequate and reasonably designed to provide notice to the Hard Consent Holders as counterparties to the leases that may be conveyed.

K. The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, creditors, and all other parties in interest herein.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

**Retention of EnergyNet**

1. Pursuant to section 327(a) of the Bankruptcy Code, the Debtors are authorized to retain EnergyNet as oil and gas broker and auctioneer in accordance with all the terms set forth in the EnergyNet Agreement, except as such terms are altered or modified by this Bidding Procedures Order.

2. Pursuant to section 328(a) of the Bankruptcy Code, the Fee Structure as set forth in the Sale Motion and EnergyNet Agreement is approved, and the Debtors are authorized to pay EnergyNet a commission-based fee in accordance with the Fee Structure terms set forth in the Sale Motion, except as otherwise provided in this Bidding Procedures Order.

3. EnergyNet shall file applications for the allowance of compensation for services rendered and reimbursement of expenses incurred pursuant to and in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, Complex Case Procedures, and the guidelines established by the Office of the United States Trustee; *provided however*, EnergyNet shall be compensated and reimbursed pursuant to

section 328(a) of the Bankruptcy Code, and EnergyNet's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code.

4. Any indemnification of EnergyNet as provided in the EnergyNet Agreement is subject to the following:

a. As set forth in subparagraph (c), EnergyNet shall not be entitled to indemnification, contribution, or reimbursement pursuant to the EnergyNet Agreement for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

b. The Debtors shall have no obligation to indemnify EnergyNet, or provide contribution or reimbursement to EnergyNet, for any claim or expense that is either: (i) judicially determined (with such determination having become final) to have arisen from EnergyNet's gross negligence, willful misconduct, breach of fiduciary duty, fraud, bad faith, or self-dealing; or (ii) settled prior to a judicial determination as to EnergyNet's gross negligence, willful misconduct, breach of fiduciary duty, fraud, bad faith, or self-dealing but determined by this Court, after notice and a hearing, to be a claim or expense for which EnergyNet should not receive indemnity, contribution, or reimbursement under the terms of the EnergyNet Agreement, as modified by this Bidding Procedures Order; and

c. If, before the earlier of the entry of an order (i) approving an Asset sale transaction, (ii) confirming a chapter 11 plan in these cases, and (iii) closing these chapter 11 cases (with such order having become a final order no longer subject to appeal), EnergyNet believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the EnergyNet Agreement (as modified by this Bidding Procedures Order), including the advancement of defense costs, EnergyNet must file an application for such payment in this Court, and the Debtors may not pay any such amounts to EnergyNet before the entry of an order by this Court approving such payment. All parties in interest shall retain the right to object to any demand by EnergyNet for indemnification, contribution, or reimbursement.

5. Notwithstanding anything to the contrary in the Engagement Agreement, any disputes regarding the Engagement Agreement will be determined by this Court.

**Sale and Bidding Procedures**

6. The EnergyNet Agreement sets forth the applicable Bidding Procedures for a sale of the Assets by EnergyNet through an auction, sealed bid, or other sale process, as such Bidding Procedures may be otherwise altered or modified by this Bidding Procedures Order, and such Bidding Procedures are hereby approved. The Debtors and EnergyNet, as applicable, are hereby granted power and authority to take all steps necessary or appropriate to carry out the provisions of this Bidding Procedures Order. In addition to the Debtors' Assets described in the Motion and EnergyNet Agreement to be sold by EnergyNet at auction, the Assets to be included in the auction by EnergyNet shall include all of the Debtors' interest in buildings, vehicles, equipment, machinery, inventory, software, hardware, contracts, intellectual property, licenses, permits, books and records, and all other property used by the Debtors in the operation of their wells and mineral leases (collectively, the "**EnergyNet Auction Assets**"). For the avoidance of doubt, the EnergyNet Auction Assets shall exclude cash, accounts receivable, and causes of action of the Debtors, including Avoidance Actions as defined in the Final DIP Order. Except as modified by this Bidding Procedures Order, the Bidding Procedures set forth in the EnergyNet Agreement are incorporated herein by reference as if fully set forth herein. Notwithstanding the foregoing, the consummation of a sale of the Assets (a "**Sale Transaction**") shall remain subject to the entry of a Sale Order approving the sale of the Debtors' Assets as contemplated in the Sale Motion after a Sale Hearing.

7. The Debtors will conduct an initial round ("**Round 1**") of bidding on the Assets. The deadline for third-parties to submit Round 1 bids to EnergyNet shall be **5:00 p.m. (prevailing Central Time) on October 7, 2020** (the "**Bid Deadline**"). The Debtors and EnergyNet shall notify the DIP Lender, and other interested parties upon request, of the highest

and best bid after Round 1, and may negotiate and work with bidders after the Bid Deadline to resolve any issues with respect to the bids.

8. The Debtors, in consultation with the Special Committee and EnergyNet, shall retain discretion to determine whether to conduct a subsequent round ("**Round 2**") of bidding on the Assets if, in the business judgment of the Debtors and the Special Committee, Round 2 bidding is necessary to maximize value for the Debtors' estates. The Debtors, in consultation with the Special Committee, shall determine the manner in which Round 2 bidding will be conducted in order to achieve the highest sale price, and the selection of the highest and best bid in Round 2, and bidding in Round 2 shall be completed on **October 12, 2020 at 5:00 p.m. (prevailing Central Time)**.

9. The Debtors, in consultation with the Special Committee, will determine which party has submitted the highest and best bid for the Assets, after the completion of Round 1 bidding and Round 2 bidding, if applicable, and will determine which party is the highest and best bidder (the "**Successful Bidder**"). As soon as reasonably practicable after the conclusion of the auction, but not later than **October 12, 2020**, the Debtors shall file a Notice of Successful Bidder on the Court's docket.

10. Objections, if any, to the Sale Motion as it relates to the auction or the Successful Bidder, including, for the avoidance of doubt, objections relating to adequate assurance of future performance by the Successful Bidder, (an "**Auction Objection**") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Auction Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (c) be filed with the Clerk of the Court no later than **12:00 p.m. (prevailing Central Time) on October 14, 2020** (the "**Auction Objection Deadline**"); and (d) be served, so as to be actually received on

or before the Auction Objection Deadline by counsel for the Debtors, Okin Adams LLP, 1113 Vine Street, Suite 240, Houston, Texas 77002, Attn: Matthew S. Okin (mokin@okinadams.com) and Ryan A. O'Connor (roconnor@okinadams.com).

11. Failure to timely file an Auction Objection by the Auction Objection Deadline shall be deemed to be consent to the Successful Bidder and the manner in which the Auction was conducted.

12. The hearing to approve the sale to the Successful Bidder will be conducted on **October 15, 2020, at 2:30 p.m. (prevailing Central Time)** (the "**Sale Hearing**"). The Sale Hearing may be adjourned by the Debtors by announcement in open Court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' Chapter 11 Cases. The Successful Bidder shall appear at the Sale Hearing and be prepared to testify, if necessary, in support of the successful bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the proposed sale.

13. The DIP Lender and any statutory committee appointed in these Chapter 11 Cases reserve all rights regarding, and are permitted to object at the Sale Hearing with respect to, any of the Debtors' decisions regarding (a) whether a Round 2 bidding process is necessary, (b) the manner in which the Debtors conducted bidding, and (c) the selection of the highest and best bids.

14. The Bidding Procedures contemplated by the EnergyNet Agreement are fair, reasonable, and appropriate and are designed to maximize recoveries for the benefit of the Debtors' estates, their creditors, and other parties in interest. The Debtors may proceed with the Sale Transaction in accordance with the Bidding Procedures and the terms of this Bidding

Procedures Order. Any disputes as to the effectuation of the Bidding Procedures, including the selection of the Successful Bidder, shall be resolved by this Court.

15. Notwithstanding anything to the contrary provided in the EnergyNet Agreement, should the Successful Bidder in the Sale Transaction fail tender the total purchase price for the Assets or close the sale after entry of a Sale Order, the Debtors shall retain all rights and remedies in connection with such failure, and this Court shall retain jurisdiction over any dispute relating to such failure.

16. The Debtors shall not be authorized to sell the Assets in any Sale Transaction that purports to retain any post-closing recourse against the Debtors, and the EnergyNet Agreement and Bidding Procedures are hereby modified to provide that, notwithstanding anything to the contrary provided in the EnergyNet Agreement, EnergyNet shall notify the Debtors and any bidders that any definitive documentation relating to the Sale Transaction shall not contain any provisions providing for any post-closing recourse of any kind against the Debtors. Any provisions in the EnergyNet Agreement or other sale documents executed by the Debtors that: (a) provide for indemnification by any Debtor, (b) relate to any potential refunds of purchase price paid for the Assets, or (c) relate to any other rights to rescind, unwind, or otherwise cancel the Sale Transaction, shall be null and void and of no force and effect.

**Credit Bid Rights**

17. Notwithstanding anything to the contrary provided in the EnergyNet Agreement, and consistent with the Interim DIP Order and any applicable Final DIP Order entered by the Court, the DIP Lender shall have the right to credit bid (the "**Credit Bid Rights**"), in its sole and absolute discretion, the full amount of the DIP Lender's claims in these Chapter 11 Cases on the Debtors' EnergyNet Auction Assets. To the extent the DIP Lender exercises its Credit

Bid Rights, such credit bid must be for the full amount of the DIP Lender's claims in these Chapter 11 Cases (*i.e.*, the entire amount drawn from the DIP Financing as defined in the Final DIP Order). In the event the DIP Lender is the Successful Bidder, the DIP Lender shall have the right, through and including the Sale Hearing, to designate any entity to take title and operate Assets in connection with such credit bid.

18. The DIP Lender's Credit Bid Rights with respect to Round 1 and Round 2 bidding as set forth above shall be exercised consistent with the above and with the following:

a. The Debtors and EnergyNet shall present the highest and best bid received after completion of Round 1 to the DIP Lender.

b. The DIP Lender shall have the right and the option to exercise its Credit Bid Rights after being presented with the Round 1 highest and best bid.

c. If the DIP Lender declines to exercise Credit Bid Rights after Round 1, it shall no longer be permitted to exercise any further Credit Bid Rights in Round 2.

d. If the DIP Lender chooses to exercise its Credit Bid Rights after the completion of Round 1, it shall be permitted to be a bidder and participate in Round 2.

19. If the DIP Lender exercises its Credit Bid Rights and submits a bid for the Assets as outlined above, the DIP Lender's bid shall include a cash portion sufficient to pay (i) tax liens; (ii) budgeted administrative expenses in the budget approved pursuant to the Interim DIP Order and the Final DIP Order; (iii) quarterly fees owed to the Office of the United States Trustee; (iv) the EnergyNet fee; and (v) all professional compensation claims subject to the Carve Out set forth in the Interim DIP Order and any applicable Final DIP Order. For the avoidance of doubt, in no event shall the DIP Lender's total bid, including cash and credit bid, leave the Debtors and their estates with funds less than is reasonably estimated by the Debtors as necessary to satisfy the claims, fees and expenses set forth in this paragraph. Such

calculations of funds reasonably estimated by the Debtors to satisfy the claims, fees, and expenses set forth in this paragraph shall be net of all of the Debtors' cash, cash equivalents, and accounts receivable.

20. If the DIP Lender is the Successful Bidder for the Assets, the definitive documentation of the Sale Transaction, including the Sale Order, shall be in form and substance acceptable to the DIP Lender, which acceptance shall not be unreasonably withheld.

21. If the DIP Lender is not the Successful Bidder for the Assets then: (i) the form of Sale Order shall be in form and substance acceptable to the DIP Lender, which acceptance shall not be unreasonably withheld; and (ii) all of the Debtors' obligations to the DIP Lender shall be governed by the terms of the Interim DIP Order and any applicable Final DIP Order entered by the Court.

**Sale Notice Procedures**

22. The Sale Notice, substantially in the form attached to the Sale Motion, is hereby approved. The Sale Notice is reasonably calculated to provide sufficient notice to all parties in interest of the Debtors' intent to consummate the sale with the Successful Bidder and constitutes adequate notice of the sale. Additionally, the following Sale Notice procedures are hereby approved:

(i) The Debtors shall serve the Sale Notice, together with the EnergyNet Agreement, within five (5) business days after the entry of this Bidding Procedures Order upon all parties on the Debtors' Master Service List and the following additional parties to the extent not included in the Master Service List: (a) counsel to any statutory committee appointed in these Chapter 11 Cases; (b) the United States Trustee for the Southern District of Texas; (c) all other parties known to the Debtors who have or may have asserted liens, claims, encumbrances, or interests in or against any of the Assets; (d) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (e) all of the Debtors' creditors as required by Bankruptcy Rule 2002(a)(2); (f) the Texas Railroad Commission and Texas Commission on Environmental Quality; (g) federal, state, and local taxing authorities; (h) all of the counterparties to the Debtors' executory contracts and

unexpired leases; and (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002. The Sale Notice shall also be served upon all parties known to have expressed an interest in a transaction with respect to all or a part of the Assets.

(ii) Any objections to the relief requested in this Sale Motion as relates to the sale of the Assets (a "**Sale Objection**") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Sale Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (c) be filed with the Clerk of the Court no later than **5:00 p.m. (prevailing Central Time) on September 25, 2020** (the "**Sale Objection Deadline**"); and (d) be served, so as to be actually received on or before the Sale Objection Deadline by counsel for the Debtors, Okin Adams LLP, 1113 Vine Street, Suite 240, Houston, Texas 77002, Attn: Matthew S. Okin (mokin@okinadams.com) and Ryan A. O'Connor (roconnor@okinadams.com).

(iii) The failure of any person or entity to file a Sale Objection by the Sale Objection Deadline shall be deemed a consent to the sale of the Assets pursuant to the auction conducted by EnergyNet and the other relief requested in the Sale Motion. Further, the failure to file a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of (a) any objection to the Sale Motion; (b) the sale of the Assets free and clear of an liens, claims, and encumbrances; and (c) the Debtors' consummation and performance under an asset purchase agreement for the sale of the Assets.

(iv) If a Sale Objection is timely filed by the Sale Objection Deadline and the relevant parties are unable to resolve the Sale Objection prior to the commencement of the Sale Hearing, such Sale Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

**Contract Notice Procedures**

23. The Contract Notice, substantially in the form attached to the Sale Motion, is hereby approved. The Contract Notice to be provided and the method of service constitutes good, proper and adequate notice, and is reasonably calculated to provide sufficient notice to all contract counterparties of (i) the Debtors' intent to assume and assign the Assigned Contracts to the Successful Bidder, and (ii) the proposed Cure Amount associated with such assumption and assignment. Additionally, the following Contract Notice procedures are hereby approved:

(i) The Debtors shall cause the Cure Notice to be served to any counterparties to the Debtors' executory contracts and unexpired leases that may be assumed and assigned not later than five (5) days after entry of this Bidding Procedures Order.

The Contract Notice shall provide the counterparties to such executory contracts and unexpired leases with notice of the amount that the Debtors believe must be cured upon assumption and assignment as required under Bankruptcy Code section 365 (the "**Cure Amount**").

(ii) Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Contract Notice, including, but not limited to, the Cure Amounts set forth in the Contract Notice (a "**Contract Objection**"),[3] must: (a) set forth in writing and describe with specificity the factual and legal basis for the Contract Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (c) be filed with the Clerk of the Court no later than **5:00 p.m. (prevailing Central Time) on September 25, 2020** (the "**Contract Objection Deadline**"); and (d) be served, so as to be actually received on or before the Contract Objection Deadline by counsel for the Debtors, Okin Adams LLP, 1113 Vine Street, Suite 240, Houston, Texas 77002, Attn: Matthew S. Okin (mokin@okinadams.com) and Ryan A. O'Connor (roconnor@okinadams.com).

(iii) If a contract counterparty to an executory contract or unexpired lease set forth in the Contract Notice served by the Debtors fails to file a Contract Objection by the Contract Objection Deadline, then the Cure Amount set forth in the Contract Notice will be binding upon the contract counterparty, and all parties in interest, for all purposes in the Chapter 11 Cases and otherwise. All such counterparties to those executory contracts and unexpired leases attached to the Contract Notice will: (a) be forever barred from objecting to the Cure Amounts with respect to such executory contracts and unexpired leases; (b) be deemed to have consented to the assumption and assignment if the successful bidder for the Assets designates such contract or lease as an Assigned Contract; and (c) be forever barred and estopped from asserting or claiming against the Debtors or the successful bidder, as applicable, that any additional amounts are due, other defaults exist, other conditions to assignment must be satisfied under such executory contracts or unexpired leases, or that there is any objection or defense to the assumption and assignment.

(v) If a non-Debtor counterparty to an executory contract or unexpired lease set forth in the Contract Notice timely files a Contract Objection, whether based on Cure Amount, adequate assurance of future performance, or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

(iv) If at any time after the Contract Notice is served the Debtors amend the Contract Notice to include additional executory contracts or unexpired leases, then the

[3] All objections to the identity of the Successful Bidder, including, for the avoidance of doubt, adequate assurance of future performance by the Successful Bidder, shall be filed by the Auction Objection Deadline of October 14, 2020 at 12:00 p.m. (prevailing Central Time).

Debtors shall serve a supplemental contract notice (a "**Supplemental Contract Notice**") by first class mail, facsimile, electronic transmission, or overnight mail on the contract counterparty (and its attorney, if known) to each such contract (a "**Previously Omitted Contract**") within three (3) business days of the amendment to the Contract Notice. Each Supplemental Cure Notice shall set forth the following: (i) the name and address of the contract counterparty; (ii) notice of the assignment (subject to the right of the Debtors and the successful bidder to decline the assumption and assignment of the Assigned Contract prior to closing); (iii) identification of the Assigned Contract; and (iv) the Cure Amount, if any.

(v) Unless the contract counterparty to the Previously Omitted Contract properly files a Contract Objection to the Supplemental Contract Notice by the later of (i) the Contract Objection Deadline, or (ii) fifteen (15) days after service of the Supplemental Contract Notice, the Debtors may obtain an order of the Court fixing the Cure Amounts and approving the assumption and assignment of the Previously Omitted Contract as an Assigned Contract. If a Contract Objection is timely filed and served with respect to a Previously Omitted Contract, and the relevant parties are unable to resolve the Contract Objection, such Contract Objection will be adjudicated at the Sale Hearing or, if the Sale Hearing date has passed, at such other date and time as may be fixed by the Court.

(vi) For the avoidance of doubt, the inclusion of an executory contract or unexpired lease on the Contract Notice shall not obligate the Debtors to assume and assign any executory contract or unexpired lease listed thereon. Prior to closing the sale, the successful bidder shall provide written notice of all contracts to be designated as Assigned Contracts in connection with the sale. The Debtors shall file a Notice of Assigned Contracts prior to closing a sale to the successful bidder and serve such Notice to each counterparty the Assigned Contracts. Only those executory contracts and unexpired leases designated as Assigned Contracts at closing of the sale of the Assets will be assumed and assigned to the successful bidder.

**Hard Consent Procedures**

24. The Hard Consent Notice, substantially in the form attached to the Sale Motion, is hereby approved. The Hard Consent Notice to be provided and the method of service constitutes good, proper and adequate notice, and is reasonably calculated to and provide the Hard Consent Holders to the oil and gas leases and related agreements reasonable notice and opportunity to provide affirmative written consent or otherwise object to the assignment of the applicable lease. Additionally, the following Hard Consent Notice procedures are hereby approved:

(i) The Debtors shall cause the Hard Consent Notice to be served to any Hard Consent Holders not later than five (5) days after entry of this Bidding Procedures Order.

(ii) Objections, if any, by a Hard Consent Holder to the assignment of any oil and gas lease or related agreement identified in the Hard Consent Notice (a "**Hard Consent Objection**") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Hard Consent Objection; (b) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (c) be filed with the Clerk of the Court no later than the Sale Objection Deadline set forth above of **5:00 p.m. (prevailing Central Time) on September 25, 2020**; and (d) be served, so as to be actually received on or before the Sale Objection Deadline by counsel for the Debtors, Okin Adams LLP, 1113 Vine Street, Suite 240, Houston, Texas 77002, Attn: Matthew S. Okin (mokin@okinadams.com) and Ryan A. O'Connor (roconnor@okinadams.com).

(iii) If no timely objection to the assignment of a particular oil and gas lease is received by the Sale Objection Deadline, then the Hard Consent Holder shall be deemed to have consented to the assignment of such leases or otherwise waived the right to object to the assignment under the terms of the applicable lease. In the alternative, the Debtors submit that the Court should find that the Hard Consent Rights constitute "interests" as that term is used in section 363(f) of the Bankruptcy Code, and that any Hard Consent Holder's failure to object in accordance with the Hard Consent Notice and Bidding Procedures Order constitutes consent to the sale to the Stalking Horse Purchaser or other Successful Bidder, as applicable, free and clear of such interests.

(iv) If a Hard Consent Objection is timely filed by the Sale Objection Deadline and the relevant parties are unable to resolve the Hard Consent Objection prior to the commencement of the Sale Hearing, such Hard Consent Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court.

**Other Provisions**

25. Nothing in this Bidding Procedures Order authorizes the use of any cash collateral or debtor in possession financing. Any use of cash collateral or debtor in possession financing is subject to the terms and conditions contained in the Interim DIP Order and any applicable Final DIP Order entered by the Court.

26. Notwithstanding the Sale Motion, EnergyNet Agreement, or Atherton Declaration, to the extent the Debtors wish to materially expand the scope of EnergyNet's

services beyond those services set forth in the Sale Motion, EnergyNet Agreement, or Atherton Declaration, the Debtors shall be required to seek further approval from this Court.

27. Prior to service, the Debtors may make final, non-substantive edits to the Sale Notice, Hard Consent Notice, and Contract Notice consisting solely of correcting typographical and grammatical errors, making stylistic and formatting improvements, adding relevant dates and deadlines, and adding revisions announced on the record at the Bidding Procedures Hearing, each of which shall be deemed approved by this Bidding Procedures Order without further notice or hearing.

28. Notwithstanding anything to the contrary in this Bidding Procedures Order, all parties expressly reserve all rights as to the determination of the value or the allocation of the proceeds from the sale of the Debtors' Assets, it being understood and agreed that the Court has the power to determine such allocation.

29. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise or any Bankruptcy Local Rules of this Court, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

30. The Debtors are authorized and empowered to take such action as may be necessary to implement and effect the terms and requirements established under this Bidding Procedures Order.

31. This Bidding Procedures Order shall be binding on and inure to the benefit of the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

32. All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33. To the extent that this Bidding Procedures Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these Chapter 11 Cases, the terms of this Bidding Procedures Order shall govern.

34. This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of the Successful Bid and this Bidding Procedures Order. To the extent any provisions of this Bidding Procedures Order are inconsistent with the Sale Motion or EnergyNet Agreement, the terms of this Bidding Procedures Order shall control.

**Signed: August 27, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**