

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
08/28/2020

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **BRAHMAN RESOURCE** | § | **Case No. 20-33697** |
| **PARTNERS, LLC,** *et al.,* | § | |
| | § | **Chapter 11** |
| **Debtors.**[1] | § | |
| | § | **(Jointly Administered)** |

**FINAL ORDER (I) AUTHORIZING USE
OF CASH COLLATERAL; (II) AUTHORIZING THE DEBTORS TO OBTAIN
SECURED POST-PETITION FINANCING; (III) GRANTING LIENS AND
SUPERPRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; (V)
SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**
(Relates to Doc. No. 13)

The Court considered the Motion[2] filed by the above-captioned debtors and debtors-in-

possession (the "**Debtors**") for entry of an interim order [Doc. No. 35] (the "**Interim Order**") and

a final order (this "**Final Order**"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title

11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 4001-1(b),

4002-1(i), and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas

("**Bankruptcy Local Rules**") and the Procedures for Complex Chapter 11 Cases in the Southern

District of Texas (the "**Complex Case Procedures**"), providing for, among other things:

a.  authorizing the Debtor to obtain senior secured, post-petition financing on
a priming, superpriority basis from Brahman DIP Lender, LLC (the "**DIP
Lender**") under the attached form of Senior Secured Debtor-in-Possession
Credit Agreement by and between the Debtors and the DIP Lender (as
subsequently amended, restated, or otherwise modified from time to time,
the "**DIP Financing Agreement**") in an aggregate principal amount not to

---

[1] The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective
Employer Identification Numbers, are as follows: Brahman Resource Partners, LLC (7253); and BRP Vista Grande,
LLC (1481).  The Debtors' service address is: 8900 Eastloch Dr., Suite 235, Spring, Texas 77379.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion.

exceed $1,500,000, and including, without limitation, principal, interest, fees, expenses, and other costs of the DIP Lender in these bankruptcy cases (the "**Chapter 11 Cases**"), in accordance with the terms and conditions set forth herein and in the DIP Financing Agreement, the other Credit Documents (as defined in the DIP Financing Agreement), and all other related agreements and documents (collectively, the "**DIP Financing**");

b.      authorizing the Debtors to enter into, execute, deliver and perform under the DIP Financing and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of the Debtor to the DIP Lender on account of the DIP Financing or granting or perfecting liens or security interests by the Debtors in favor of and for the benefit the DIP Lender on account of the DIP Financing Agreement, as the same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among the Debtors and the DIP Lender, the terms of which are referenced and incorporated herein as if fully set forth herein (collectively, the "**DIP Documents**");

c.      approving the terms and conditions of the DIP Financing, including the DIP Financing Agreement and the other DIP Documents;

d.      granting valid, enforceable, non-avoidable, and automatically fully perfected priming liens on, and security interests in, the DIP Collateral (as defined below) to the DIP Lender to secure all obligations (the "**DIP Obligations**") pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code;

e.      granting allowed superpriority administrative claims to the DIP Lender with respect to the DIP Obligations pursuant to section 364(c)(1) of the Bankruptcy Code;

f.      modifying the automatic stay of section 362 of the Bankruptcy Code to the extent set forth herein and in the DIP Documents, and providing for the immediate effectiveness of this Final Order; and

g.      scheduling a final hearing (the "**Final Hearing**") to consider entry of this Final Order granting the relief requested in the Motion on a final basis, approving the relief granted herein on a final basis, and authorizing the Debtor to borrow from the DIP Lender under the DIP Documents up to the full amount of the DIP Financing.

Upon due and sufficient notice of the Motion, the interim hearing on the Motion (the "**Interim Hearing**"), and the Final Hearing having been provided by the Debtors; and the Interim

Hearing having been held on July 29, 2020; and the Final Hearing having been held on August 24, 2020; and after considering all the pleadings filed with this Court; and upon the record of the First Day Declaration, the Interim Hearing, the Final Hearing, and the Motion; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and is otherwise fair and reasonable and in the best interests of the Debtors, their estates, and creditors, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration and good and sufficient cause appearing therefor; it is hereby:

**FOUND AND DETERMINED THAT:[3]**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     On July 26, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**"). Since the Petition Date, the Debtors have continued in possession and management of their businesses and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

---

[3] All findings of fact and conclusions of law announced by the Court at the Final Hearing in relation to the Motion are incorporated herein by reference to the extent not inconsistent herewith.

D.      This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and Complex Case Procedures, and no other or further notice of the Motion or the entry of this Final Order shall be required.

F.      The relief granted in this Final Order is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

G.      With respect to the DIP Financing:

   a.      *Need for DIP Financing*.  The Debtors have an immediate and critical need to obtain post-petition financing under the DIP Financing Agreement. The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, and otherwise finance their operations, requires the availability of working capital from the DIP Financing. Without the ability to access the DIP Financing as provided for in this Final Order, the Debtors, their estates, and creditors would suffer immediate and irreparable harm.

   b.      *No Credit Available on More Favorable Terms*.  In light of the Debtors' facts and circumstances, the Debtors are unable to obtain: (i) adequate unsecured credit allowable either (x) under sections 364(b) and 503(b)(1) of the Bankruptcy Code, or (y) under section 364(c)(1) of the Bankruptcy Code; (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code, and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code; or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lender on terms more favorable than the terms of the DIP Financing. In light of the Debtors' facts and circumstances, the only viable source of secured credit available to the Debtors is the DIP Financing. The Debtors require additional financing under the DIP Financing Agreement and the terms of this Final Order to satisfy their post-petition liquidity needs.

c.   *Willingness to Provide Financing*. The DIP Lender has indicated a willingness to provide financing to the Debtor, subject to: (i) the entry by the Court of this Final Order; (ii) approval by the Court of the terms and provisions of the DIP Financing and DIP Documents; and (iii) entry of findings by the Court that such financing is essential to the Debtor's estate, that the DIP Lender is extending post-petition credit to the Debtor pursuant to the DIP Documents and this Final Order in good faith, and that the claims, superpriority claims, security interests and liens, and other protections granted pursuant to the Interim Order, this Final Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Final Order or any other order.

d.   *Security Interests and Liens Are Appropriate*. The security interests and liens granted pursuant to this Interim Order to the DIP Lender are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates; or (ii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.

e.   *Good Faith*. The Debtors and the DIP Lender have negotiated the terms and provisions of the DIP Documents and this Final Order in good faith and at arm's length, and any credit extended and loans made to the Debtors pursuant to this Final Order shall be, and hereby are, deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code.

f.   *Notice*. Notice of the Final Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by first class United States mail, facsimile, email, overnight courier, or hand delivery, to certain parties in interest. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Final Order.

g.   *Immediate Entry*. The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this Final Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed. The Court concludes that immediate entry of this Final Order is in the best interest of the Debtors' and their estates and creditors.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     <u>Motion Granted</u>. The Motion is hereby granted on a final basis in accordance with and subject to the terms and provisions set forth in this Final Order and the DIP Documents. All objections to the interim relief sought in the Motion to the extent not withdrawn, waived, or resolved by agreement as stated on the record at the Final Hearing, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.     <u>Authorization of the DIP Financing</u>.

a.     The DIP Financing is hereby approved. The Debtors are hereby expressly and immediately authorized to effect the DIP Financing Agreement, to execute, deliver, and perform under the DIP Documents, and to borrow, incur, perform, and pay the DIP Obligations, in each case, in accordance with and subject to the terms of this Final Order and the DIP Documents, and to execute, deliver, and perform under any and all other instruments, certificates, agreements, and documents that may be requested by the DIP Lender or that may be required, necessary, or prudent for the performance by the Debtors with respect to the DIP Financing or the creation and perfection of the DIP Liens (as defined below). The DIP Documents represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates, and the DIP Obligations shall be due and payable, in each case, in accordance with the terms of this Final Order and the DIP Documents. The DIP Financing Agreement, substantially in the form to the Motion as Exhibit A, and the other DIP Documents are hereby approved as to both form and content on a final basis.

b.     The Debtors acknowledge, represent, stipulate, and agree, and the Court hereby finds and orders, that:

i.     in entering into the DIP Financing and as consideration therefor and for the other accommodations and agreements of the DIP Lender reflected herein and in the DIP Documents, the Debtors hereby agree that until such time as all of the DIP Obligations are indefeasibly paid in full, in cash, on a final basis, and the DIP Financing Agreement and other DIP Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime, or seek to prime, the DIP Obligations, the DIP Liens, or the DIP Superpriority Claims (as defined below) provided to the DIP Lender under this Final Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726, or 1114 of the Bankruptcy Code or otherwise or acquiescing thereto except as expressly authorized in the DIP Financing Agreement; and

ii.      the Debtors are liable to (A) the DIP Lender and its successors and assigns, for the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter), and performance of, all DIP Obligations owed or hereafter owing to the DIP Lender and its successors and assigns, for the full and prompt payment when due and performance of, all obligations hereunder. The Debtors agree that their obligations under this Final Order and any DIP Document shall not be discharged until the indefeasible payment and performance, in full in cash, of the DIP Obligations and the other obligations hereunder and the termination of the lending commitments under the DIP Documents.

3.      <u>Authorization of the Final Financing</u>. To prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to borrow under the DIP Financing the full aggregate principal amount of $1,500,000.00 subject to the terms and conditions set forth in the Interim Order, this Final Order and the DIP Documents.

4.      <u>DIP Obligations</u>. The DIP Documents expressly evidence the DIP Obligations, and are valid, binding, and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Cases ("**Successor Cases**"), and their creditors and other parties in interest, in each case, in accordance with the terms of this Final Order and the DIP Documents.

5.      <u>DIP Liens</u>. With respect to the DIP Obligations under the DIP Financing Agreement, the other DIP Documents, the Interim Order, and this Final Order, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, with respect to the Debtors, their estates, and all DIP Collateral, the following liens:

a.      a first priority, priming security interest in and lien pursuant to section 364(d)(1) of the Bankruptcy Code on all encumbered DIP Collateral (the "**Section 364(d)(1) Liens**"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, and subject only to (i) the Carve-Out and (ii) valid, perfected, and non-avoidable tax liens on property of the Debtors that are in existence on the Petition Date (the "**Permitted Prior Liens**");

b.      a first priority security interest in and lien pursuant to section 364(c)(2) of the Bankruptcy Code on all unencumbered DIP Collateral (the "**Section 364(c)(2) Liens**"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out; and

c.      a junior security interest and lien pursuant to section 364(c)(3) of the Bankruptcy Code on all DIP Collateral that is subject to a Permitted Prior Lien (the "**Section 364(c)(3) Liens**," and collectively with the Section 364(d)(1) Liens and Section 364(c)(2) Liens, the "**DIP Liens**"), which Section 364(c)(3) Liens also shall be subject to the Carve-Out.

None of the DIP Obligations, DIP Liens, or DIP Superpriority Claims shall: (i) be subject to, or *pari passu* with, any lien or security interest that is avoided and preserved for the benefit of either Debtor's estate under section 551 of the Bankruptcy Code; (ii) be subject to sections 510, 549, or 550 of the Bankruptcy Code; or (iii) hereafter be subject to, subordinated to, or made *pari passu* with, any other lien, security interest, or claim under sections 361, 363, or 364 of the Bankruptcy Code or otherwise, except as expressly provided in the Interim Order or this Final Order.

6.      DIP Collateral.  The DIP Liens of the DIP Lender, constitute liens on and security interests in the following (collectively, the "**DIP Collateral**"): (a) all of the Debtors' now owned and hereafter acquired real and personal property, tangible and intangible assets, prepetition and post-petition assets, and rights of any kind or nature, wherever located, including, without limitation, all oil and gas properties (including "**Oil and Gas Properties**" as defined in the DIP Loan Agreement and any as-extracted collateral, goods, fixtures, and hydrocarbons related thereto), goods, accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, swap and hedge proceeds and termination payments, servicing receivables, securities, equity interests, chattel paper, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, commercial tort claims, claims and causes of action arising under section 549 of the Bankruptcy Code, and all other claims and causes of action of any kind or nature (other than the Debtors' claims and causes of action arising under sections 544, 545,

547, 548, and 550 of the Bankruptcy Code, collectively, the "**Avoidance Actions**"); and (b) the products, rents, offspring, profits, and proceeds of each of the foregoing.

7.       DIP Superpriority Claims. With respect to the DIP Obligations under the DIP Financing Agreement, the other DIP Documents, the Interim Order, and this Final Order, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, with respect to the Debtors, their estates, and all of their assets and properties, the following superpriority claims: a superpriority administrative expense claim in the Chapter 11 Cases or any Successor Case pursuant to section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses pursuant to the Bankruptcy Code, including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment, which superpriority claims of the DIP Lender shall be subordinate only to the Carve-Out (the "**DIP Superpriority Claims**"). The DIP Superpriority Claims shall be against the Debtors and shall be payable from and have recourse to all assets and properties of the Debtors. Except for the Carve-Out, the DIP Superpriority Claims shall not be made subject to, or *pari passu* with, any claim heretofore or hereinafter granted or created in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or any Successor Cases.

8.       Payment of DIP Fees and Expenses.

a.       The DIP Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default (as defined in the DIP Financing Agreement)) set forth in the DIP Documents, and be due and payable in accordance with this Final Order and the DIP Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.

b.    Within five (5) business days after the receipt of invoices by the Debtors, the U.S. Trustee, and any statutory committee, the Debtors shall pay (i) to the DIP Lender the undisputed fees payable under the terms of the DIP Documents, as set forth in the DIP Documents, in each case whether or not such amounts are included in the Budget or arose before or after the Petition Date; and (ii) the reasonable and documented prepetition and post-petition fees and expenses of attorneys and advisors for the DIP Lender. The payment of the fees, expenses, and disbursements set forth in this paragraph 8(b) shall be paid at Maturity.

c.    The invoices of the DIP Lender and its attorneys and advisors shall be sufficiently detailed to enable a determination as to the reasonableness of such fees, expenses and disbursements; *provided*, *however*, that such invoices may be redacted to the extent necessary to delete any information subject to attorney-client privilege, and information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. Within five (5) business days after the Debtors' receipt of such invoices, the Debtors, the U.S. Trustee, and any statutory committee may deliver written notice to counsel to the DIP Lender and identify specific objections to such invoices. If such objections are not resolved by the parties within ten (10) calendar days from the date notice of an objection is delivered, the Debtors, the U.S. Trustee, and any statutory committee may file an objection with the Court identifying the basis for such objection and the specific invoiced items or time entries to which an objection is raised. Any hearing on such objection shall be limited to the reasonableness or necessity of the particular item subject to the objection. The Debtors shall timely pay all invoices to the extent that specific invoiced items or time entries are not objected to as provided in this paragraph. The rights of all parties (including the DIP Lender) are reserved as to whether payments made by the Debtors pursuant to this paragraph constitute payments of principal, interest, or otherwise pursuant to section 506(b) of the Bankruptcy Code.

9.    <u>No Obligation to Extend Credit</u>. The DIP Lender shall have no obligation to make any loan, advance, or other extension of credit under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Final Order have been satisfied in full or waived the DIP Lender in accordance with the terms of the DIP Documents. The DIP Financing may be utilized to fund working capital requirements, operating expenses, and capital expenditures, subject to and in accordance with the terms of the Budget, the DIP Documents, and this Final Order.

10.    <u>Amendments</u>. The Debtors are expressly authorized and empowered to enter into amendments or other modifications of the DIP Financing Agreement and/or any other DIP Document without further order of the Court, in each case, subject to the provisions of the applicable DIP Document and in such form as the DIP Lender may agree with the Debtors in writing.

11.    <u>Budget Covenants</u>.

a.    *Initial Budget*. The Debtors delivered to the DIP Lender, an initial budget (the "**Budget**") approved by the DIP Lender, which reflects, among other things, the Debtors': (i) projected capital expenditures ("**CapEx**"); (ii) other cash disbursements (excluding CapEx) ("**Operating Cash Disbursements**"); and (iii) Estate Professionals' Allowed Professional Fees (as defined below) for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date. A copy of the initial Budget is attached hereto as **Exhibit 1**.

b.    *Budget Updates*. On or before 5:00 p.m. (prevailing Central Time) on the last Tuesday (or, if such Tuesday is not a Business Day, the immediately succeeding Business Day) of each rolling four-week period (each such date, a "**Reporting Date**," and each such four-week period, a "**Budget Period**"), the Debtors may provide the DIP Lender with an updated rolling thirteen-week cash flow forecast of the Debtors substantially in the form of the Budget (each such forecast, in the event it proposes to modify the Budget then in effect, a "**Proposed Budget**"), which Proposed Budget, upon written approval by the DIP Lender, shall become the Budget effective as of the first Monday following such written approval (the "**Budget Effective Date**"), and each such Budget shall run from its respective effective date through the Sunday prior to the Budget Effective Date of the next Budget, *provided*, *however*, that unless and until the DIP Lender shall have approved in writing any Proposed Budget or any other proposed modification to the Budget then in effect, the Debtors shall still be subject to and be governed by the terms of such Budget then in effect in accordance with the terms of this Final Order.

c.    *Variance Reporting*.

i.    On or before 5:00 p.m. (prevailing Central Time) on the first Wednesday (or, if such Wednesday is not a Business Day, the immediately preceding Business Day) following each Reporting Date (each such Wednesday, a "**Testing Date**"), the Debtors shall provide the DIP Lender with a report of receipts and disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the immediately preceding Budget Period, which report and reconciliation shall be presented

in the same form as the Budget (*i.e.*, with directly corresponding line items and variances for each on a line item by line item basis) and otherwise in form and detail reasonably satisfactory to the DIP Lender. The Debtors shall provide and make their representatives and advisors available to representatives and advisors of the DIP Lender to discuss qualitative explanations with respect to the foregoing.

ii.    On or before 5:00 p.m. (prevailing Central Time) on Wednesday (or, if such Wednesday is not a Business Day, the immediately preceding Business Day) of each calendar week, the Debtors shall provide the DIP Lender a weekly report of receipts and disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior week, which report and reconciliation shall be presented in the same form as the Budget (*i.e.*, with directly corresponding line items and variances for each on a line item by line item basis) and otherwise in form and detail reasonably satisfactory to the DIP Lender. The Debtors shall provide and make their representatives and advisors available to representatives and advisors of the DIP Lender to discuss, qualitative explanations with respect to the foregoing.

d.    *Authorized Variance*. As of any Testing Date, for the immediately preceding Budget Period, the Debtors shall not allow the actual (i) CapEx, (ii) Operating Cash Disbursements, and (iii) Estate Professionals' Allowed Professional Fees to exceed the amount budgeted for each therefor in the Budget for such period by more than ten percent (10%) of the budgeted amount for each (the "**Authorized Variance**").

12.    <u>Modification of Automatic Stay</u>. The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit: (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform any and all acts as the DIP Lender may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to incur any and all liabilities and obligations, including all the DIP Obligations, as contemplated under this Final Order and the DIP Documents; (d) the Debtors to pay any and all amounts as provided herein and in the DIP Documents; (e) the DIP Lender to retain and apply payments made in accordance with the DIP Documents and this Final Order; (f) subject to paragraph 16 hereof, the DIP Lender to exercise the rights and remedies provided for under this Final Order, the DIP Documents; and (g) the implementation of any and all of the other terms, rights, benefits, privileges, remedies, and provisions of this Final Order and the DIP Documents.

13.     <u>Perfection of DIP Liens and Postpetition Liens</u>. The DIP Liens granted to the DIP Lender pursuant to the Interim Order, this Final Order and the DIP Documents, shall be valid, enforceable, and perfected by operation of law upon entry of this Final Order by the Court without any further action by any party. The DIP Lender, with respect to the DIP Liens, shall not be required to enter into or to obtain any security agreements, control agreements, landlord waivers, mortgagee waivers, bailee waivers, or warehouseman waivers or to give, file, or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien, or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office, or any similar agency with respect to trademarks, copyrights, trade names, or patents with respect to intellectual property) (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate, record, or perfect the DIP Liens granted under the DIP Documents and/or this Final Order and approved hereby, all of which are automatically and immediately perfected by the entry of this Final Order. If the DIP Lender chooses to obtain, enter into, give, record, or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded, or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority, or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of the execution, delivery, or filing of any such Perfection Documents. In lieu of optional recording or filing any Perfection Documents, the DIP Lender may, in its sole discretion, choose to record or file a true and complete copy of this Final Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be

indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Lender shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date. In addition, the DIP Lender may, in its sole discretion, at the Debtors' expense, require the Debtors to execute, deliver, file, or record any Perfection Document. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Lender all Perfection Documents as the DIP Lender may request.

14.     <u>Cash Management System</u>. The Debtors shall maintain the cash management system in effect as of the Petition Date, as modified by this Interim Order, the DIP Documents, and any order of the Court authorizing the continued use of the cash management system.

15.     <u>Disposition of DIP Collateral</u>. Except for the filing of a sale motion and the establishment of bidding procedures for the sale of the Oil and Gas Assets in accordance with the Milestones as modified in the Bidding Procedures Order, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose (including through any casualty and condemnation events) of any portion of the DIP Collateral (or enter into any binding agreement to do so) (such sales, transfers, leases, encumbrances and other dispositions, collectively, other than as permitted by the DIP Documents and this Final Order, the "**Collateral Sales**"). All net cash proceeds of any Collateral Sales shall be paid to, and held by, the Debtors, as necessary to satisfy the DIP Liens and DIP Superiority Claims granted pursuant to the Interim Order and this Final Order. The Debtors shall not use, sell, or lease any assets outside the ordinary course of business that have a value in excess of $5,000, or seek authority of the Court to do any of the foregoing, without the prior written consent of the DIP Lender at least five (5) Business Days prior to the date on which the Debtors seek the authority of the Court for such use, sale, or lease, including, without limitation, with respect to any sale or sale process under section 363 of the Bankruptcy Code.

16.     <u>Rights and Remedies</u>. Without requiring further order from the Court and without the need for filing any motion for relief from the automatic stay or any other pleading, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to, immediately upon the occurrence and during the continuance of any Event of Default: (a) send written notice of the occurrence of an Event of Default to the Debtor, any Committee, and the U.S. Trustee (such notice, the "**<u>Event of Default</u>** **<u>Notice</u>**"); or (b) without limitation and without prior notice, terminate commitments under the DIP Documents, pursuant to and subject to the terms and conditions set forth in the DIP Financing Agreement and in this Final Order. Upon the occurrence and during the continuation of an Event of Default, the DIP Lender may file an emergency motion seeking relief from the automatic stay (the "**<u>Stay Relief Motion</u>**") in order to: (a) accelerate the DIP Obligations and (b) permit the DIP Lender to exercise any or all of its rights and remedies set forth in the DIP Orders or the DIP Loan Documents, including without limitation, to foreclose on the DIP Collateral. The Debtors shall not object to the Stay Relief Motion being heard on shortened notice so long as the Stay Relief Motion is heard on at least five (5) business days' notice. After the DIP Lender has sent the Event of Default Notice, any obligation otherwise imposed on the DIP Lender to provide any loans or advances under the DIP Financing shall be immediately suspended, unless otherwise ordered by the Court or to fund the Carve-Out as provided herein, provided, however, that Debtors' authority to use Cash Collateral pursuant the Budget shall not terminate without further order of the Court. Until such time that the Stay Relief Motion has been adjudicated by the Court, the Debtors may (a) use the proceeds of the DIP Financing (to the extent drawn prior to the occurrence of Event of Default) to (i) fund operations in accordance with the DIP Financing Agreement and the Budget and (ii) fund the Carve-Out and (b) seek a determination at the hearing on such Stay Relief Motion

whether an Event of Default has occurred, and the appropriate remedy if an Event of Default has occurred. Notwithstanding the occurrence of an Event of Default, the Maturity Date, and/or termination of the commitments under the DIP Financing Agreement, all of the rights, remedies, benefits, and protections provided to the DIP Lender under the DIP Documents and this Final Order shall survive.

17. <u>Survival</u>. Unless the DIP Lender has otherwise agreed in writing, the provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any subsequent order, and the rights, remedies, powers, privileges, liens, claims, and priorities of the DIP Lender provided for in this Final Order and in any DIP Document shall not be modified, altered, or impaired in any manner by any order, including any order (a) confirming any plan of reorganization or liquidation in the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having hereby waived such discharge); (b) the appointment of a trustee or converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Cases; or (d) entered in any superseding case under the Bankruptcy Code. The terms and provisions of this Final Order, as well as the DIP Obligations, DIP Liens, DIP Superpriority Claims, and the DIP Documents, shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims, and liens shall maintain their priority as provided by this Final Order and the DIP Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full in cash.

18. <u>Good Faith</u>. The DIP Financing and the other provisions of this Final Order, the DIP Financing Agreement, and the other DIP Documents have been negotiated in good faith and

at arm's length by the Debtors and the DIP Lender, and the extension of the financial accommodations to the Debtors by the DIP Lender pursuant to this Final Order and the DIP Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code. The DIP Lender is entitled to, and is hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

19. _Subsequent Reversal or Modification_. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (a) the validity of any obligation, indebtedness, or liability under this Final Order and the DIP Documents by the Debtors prior to the date of receipt of written notice to the DIP Lender of the effective date of such action; or (b) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created pursuant to this Final Order and the DIP Documents, including, without limitation, the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Debtor to the DIP Lender prior to written notice to DIP Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Final Order and the DIP Documents, and the DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits granted pursuant to this Final Order and the DIP Documents.

20. _Carve-Out_.

a.   _Generally_. The DIP Liens and the DIP Superpriority Claims shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**"):

    i.   all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice (as defined below));

ii.      allowed (regardless of whether allowed by the Court before or after delivery of a Carve-Out Trigger Notice), accrued, and unpaid fees and out-of-pocket expenses ("**Allowed Professional Fees**") of each professional retained by order of the Court by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "**Debtor's Professionals**") and any Committee pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtors Professionals, the "**Estate Professionals**") incurred on or prior to the date on which the DIP Lender delivers a Carve-Out Trigger Notice in aggregate accrued amounts for each such Estate Professional;

iii.     Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed $40,000 incurred on and after the first Business Day following delivery by the DIP Lender of the Carve-Out Trigger Notice (such first Business Day, the "**Post-Carve-Out Date**"), to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause being the "**Post-Carve-Out Trigger Notice Cap**"); and

iv.      Reasonable professional fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000.

b.    *Carve-Out Trigger Notice*. For purposes of the foregoing, the term "**Carve-Out Trigger Notice**" shall mean a written notice delivered by electronic mail (or other electronic means) by the DIP Lender to the Debtors, their counsel, the U.S. Trustee, and counsel to any Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

c.    *Reduction of Amounts*. The fixed dollar amount of $40,000 available to be paid under the Post-Carve-Out Trigger Notice Cap on and after the Post-Carve-Out Date on account of allowed fees and expenses incurred on and after the Post-Carve-Out Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Post-Carve-Out Date on account of fees and expenses incurred on and after the Post-Carve-Out Date to Estate Professionals (whether from proceeds of DIP Financing, or otherwise). There is no limitation on the obligations of the Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Court pursuant to section 1930 of title 28 of the United States Code.

d.    *Reservation of Rights*. Allowed Professional Fees will only be payable upon entry of appropriate order(s) of the Court authorizing payment of such Allowed Professional Fees. The DIP Lender reserves its rights to object to the allowance of any fees and expenses, including, without limitation, any fees and expenses sought that are provided for in the Budget. The payment of any fees or expenses of the Estate Professionals pursuant to the Carve-Out shall not, and shall not be deemed to: (i) reduce the Debtors' obligations owed to the DIP Lender or to any holder of

a Permitted Prior Lien; or (ii) modify, alter, or otherwise affect any of the liens and security interests of such parties in the DIP Collateral. The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Estate Professionals, the U.S. Trustee, or the Clerk of the Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any Successor Cases, and nothing in this Final Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses. This shall not limit the DIP Lender's obligation to advance to fund the Carve-Out as provided in paragraph 16.

21.     <u>Limitation on Use of Proceeds</u>. Notwithstanding anything in this Final Order to the contrary, no portion or proceeds of the DIP Financing, the DIP Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs, or expenses incurred in connection with: (a) objecting, contesting, or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Documents, or any security interests, liens, or claims granted under the Interim Order or this Final Order, or the DIP Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action against any of the DIP Lender, or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; (c) preventing, hindering, or otherwise delaying enforcement or realization on the DIP Collateral; or (d) seeking to amend or modify any of the rights granted to the DIP Lender under this Final Order or the DIP Documents, including seeking to use DIP Collateral on a contested basis.

22.     <u>No Third-Party Beneficiary</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

23.     <u>Waiver of Right to Surcharge</u>. Each of (a) the provisions of section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code are and shall be waived as to the DIP Lender, the DIP Obligations, the DIP Liens, and the DIP Collateral.   Accordingly, no costs or expenses of

administration or other charge, lien, assessment, or claim incurred at any time (including, without limitation, any expenses set forth in the Budget) by the Debtors or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, or the DIP Lender, and the Debtors, on behalf of their estates, waives any such rights.  It is expressly understood by all parties that, *inter alia*, in providing the DIP Financing as provided herein, the DIP Lender has relied on the foregoing provisions of this paragraph. Notwithstanding any approval of or consent to the Budget, nothing in this Final Order shall constitute or be deemed to constitute the consent by any of the DIP Lender to the imposition of any costs or expense of administration or other charge, lien, assessment, or claim (including, without limitation, any amounts set forth in the Budget) against such party, its claims, or its collateral under sections 105(a), 506(c), or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

24.     No Marshaling. Subject to paragraph 36, below, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral.

25.     Right to Credit Bid. Pursuant to section 363(k) of the Bankruptcy Code, (a) the DIP Lender shall have the right, in accordance with the DIP Financing Agreement and the Bidding Procedures Order, to credit bid up to the full amount of the DIP Superpriority Claims (*i.e.*, the entire amount drawn from the DIP Financing) in any Collateral Sales, as provided for in section 363(k) of the Bankruptcy Code and without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

26.    <u>Additional Defaults</u>. Without limitation of the Events of Default set forth in and defined in the DIP Documents or this Final Order, the following shall be a default hereunder and constitute an "**Event of Default**" under the DIP Documents: (a) the entry of an order dismissing or converting the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a chapter 11 trustee or an examiner or other estate representative with expanded powers; (b) the sale of all or substantially all of the assets of the Debtors without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence by the DIP Lender; (c) any material modification or extension of this Final Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence by the DIP Lender; (d) except as expressly set forth herein or in the DIP Documents, granting or imposing, under section 364 of the Bankruptcy Code or otherwise, liens or security interests in any DIP Collateral, whether senior, or equal, to the liens and security interests of the DIP Lender; (e) using, or seeking to use, proceeds of the DIP Financing in violation of this Final Order or the DIP Documents; (f) the Debtors' failure to satisfy the Milestones in the DIP Documents as modified in the Bidding Procedures Order, and (g) modifying or affecting any of the rights of the DIP Lender under this Final Order or the DIP Documents by any plan of reorganization or liquidation proposed or confirmed in the Chapter 11 Cases or subsequent order entered in the Chapter 11 Cases.  Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Lender under this Final Order and shall preserve the Carve-Out. If an order dismissing the Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that the DIP Liens and DIP Superpriority Claims granted to the DIP Lender hereunder and in the DIP Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall

remain binding on all parties in interest, and shall maintain their priorities as provided in this Final Order until all DIP Obligations and indebtedness owing to the DIP Lender under the DIP Documents shall have been indefeasibly paid in full in cash and the DIP Lender's obligations and commitments under the DIP Documents shall have been terminated, and the Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claims, and other protections granted to the DIP Lender pursuant to this Interim Order, and the Carve-Out.

27.     <u>Discharge</u>. The DIP Obligations provided herein shall not be discharged by the entry of an order confirming any plan of reorganization or liquidation in the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full, in cash, on or before the effective date of such confirmed plan of reorganization, or the DIP Lender has otherwise provided its prior written consent. The Debtors shall not propose or support any plan of reorganization or liquidation or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or within two (2) Business Days of the closing of a sale of substantially all of the Debtors' assets), which are expressly prohibited (a "**<u>Prohibited Plan or Sale</u>**") without the prior written consent of the DIP Lender.  For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

28.     <u>No Waiver</u>. This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter

brought before the Court.  Except as expressly set forth herein, nothing contained in this Final Order shall impair, prejudice, or modify any rights, claims, or defenses available in law or equity to the DIP Lender, including, without limitation, the right to (a) request conversion of the Chapter 11 Cases to chapter 7, (b) seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any Estate Professional, and (d) seek relief from the automatic stay.  All such rights, claims, and defenses, and the rights, objections, and defenses of all parties in connection therewith, are hereby reserved. Further, the failure, at any time or times hereafter, of the DIP Lender to require strict performance by the Debtors of any provision of this Final Order or the DIP Documents shall not waive, affect, or diminish any right of such parties thereafter to demand strict compliance and performance therewith. No consents required hereunder by DIP Lender shall be implied by any inaction or acquiescence by DIP Lender.

29.     <u>Successors and Assigns</u>. This Final Order, the DIP Financing Agreement, and the other DIP Documents shall be binding upon all parties in interest in the Chapter 11 Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other estate representative, and in any Successor Cases.

30.     <u>No Modification to Final Order</u>. The Debtors irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly, without the prior written consent of the DIP Lender: (a) any reversal, modification, stay, vacatur, amendment, or extension of this Final Order, or a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), 507(b), or 546 of the

Bankruptcy Code) in the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claims, other than the Carve-Out; (b) any order allowing use of Cash Collateral; and (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens. All parties in interest reserve the right to request, upon notice and hearing, further extension of the Milestones for cause shown under applicable law.

31.     _Order Controls_. In the event of any inconsistency between the terms of the DIP Documents, the Interim Order, and this Final Order, the provisions of this Final Order shall govern and control.  In the event of any inconsistency between the terms of this Final Order and the Bidding Procedures Order, the Bidding Procedures Order shall govern and control.

32.     _Limits on Lender Liability_. Nothing in the Interim Order, this Final Order or in any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of the Chapter 11 Cases. The DIP Lender shall not (i) be deemed in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 _et seq._, as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to the Debtors, their creditors, or their estates, or constitute or be deemed to constitute a joint venture or partnership with the Debtors.  Nothing in this Final Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from the prepetition or post-petition activities of the Debtors.

24

33.     <u>Payments Free and Clear</u>. Any and all payments or proceeds remitted to the DIP Lender, pursuant to the provisions of this Final Order or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.

34.     <u>Adequate Protection of M&M Lienholders</u>.  Pursuant to sections 361, 362, and 363 of the Bankruptcy Code, holders of valid, perfected mechanics' and materialmens' liens under applicable Texas statutes, the Texas Constitution, and all other applicable non-bankruptcy law (the "**<u>M&M Lienholders</u>**") are entitled to adequate protection of their interests in the applicable prepetition collateral, in the same priority as existed on the Petition Date (including valid and non-avoidable liens in existence on the Petition Date that are perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code), to the extent of the aggregate post-petition diminution in value of such prepetition collateral on account of each Debtor's use, sale, or lease of such prepetition collateral from and after the Petition Date, including as a result of the priming DIP Liens, and any other decrease in value of such interests on account of section 362 or 363 of the Bankruptcy Code (the "**<u>Diminution in Value</u>**"). In consideration for the DIP Financing and the priming DIP Liens granted to the DIP Lender, and as adequate protection for, and to secure payment for the aggregate Diminution in Value, the M&M Lienholders shall be and are granted (effective upon the Petition Date) second priority liens, subordinate only to the Carve-Out, DIP Liens, and DIP Superiority Claims, on all of the Debtors' Oil & Gas Assets and the proceeds thereof as replacement liens. For the avoidance of doubt, such second priority liens specifically exclude Avoidance Actions, including proceeds thereof.  The foregoing shall not, nor shall any

other provision of this Final Order, be construed as a determination or finding that there has been or will be any Diminution in Value of the applicable prepetition collateral of the M&M Lienholders, and the rights of all parties as to such issues are hereby preserved. The Court makes no determination as to what entities, if any, constitute M&M Lienholders within the meaning of this paragraph, and all parties expressly reserve their rights to object to any claims asserted in these Chapter 11 Cases.

35.    <u>Priority and Automatic Perfection of Replacement Liens</u>. The second priority replacement liens granted to the M&M Lienholders shall at all times, except with respect to the DIP Lender's DIP Liens and DIP Superpriority Claims, be senior to any other security interest, assignment, or lien of any creditor or other party in interest in the Chapter 11 Cases. The second priority replacement liens granted to the M&M Lienholders shall be, and hereby are, deemed duly perfected and recorded under all applicable federal, state and other laws as of the Petition Date, and no notice, filing, mortgage recordation, possession, further order or other act shall be required to effect such perfection. The second priority replacement liens shall survive and shall not be adversely modified, altered or impaired in any manner by: (a) any other financing or extension of creditor by any Debtor (under section 364 of the Bankruptcy Code or otherwise); (b) the entry of an order confirming any plan or plans of reorganization; or (c) the entry of an order converting these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or dismissing these Chapter 11 Cases, or by any other act or omission whatsoever.

36.    <u>Allocation</u>. Notwithstanding anything to the contrary in the Interim Order or this Final Order, all parties expressly reserve all rights as to the determination of the value of the Debtors' Oil & Gas Assets or the allocation of the proceeds from the sale of the Debtors' Oil & Gas Assets in any Collateral Sales.

37.    <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in interpreting, this Final Order.

38.    <u>Effect of This Final Order</u>. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

**Signed:  August 27, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit 1**

**Budget**

| Item | 0 Current Week ending 7/24/2020 (Pre-Process) | 1 Forecast Week ending 7/31/2020 | 2 Forecast Week ending 8/7/2020 | 3 Forecast Week ending 8/14/2020 | 4 Forecast Week ending 8/21/2020 | 5 Forecast Week ending 8/28/2020 (Process) | 6 Forecast Week ending 9/4/2020 | 7 Forecast Week ending 9/11/2020 | 8 Forecast Week ending 9/18/2020 | 9 Forecast Week ending 9/25/2020 | 10 Forecast Week ending 10/2/2020 | 11 Forecast Week ending 10/9/2020 | 12 Forecast Week ending 10/16/2020 | 13 Forecast Week ending 10/23/2020 | Forecast Total Thru 10/23/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts/Collections** | | | | | | | | | | | | | | | |
| Crude | | | | | | 25,600 | | | | | 25,171 | | | 24,749 | 75,520 |
| Gas | 21,306 | | | | | 17,526 | | | | 17,285 | | | | | 34,811 |
| NGL | 7,000 | | | | | 6,133 | | | | 6,100 | | | | | 12,233 |
| | | | | | | | | | | | | | | | |
| COG Sublease - Rent & Utilities | | | 1,640 | | | 1,640 | | | | | 1,640 | | | | 4,920 |
| Trek Sublease - Rent & Utilities | | | 650 | | | 650 | | | | | 650 | | | | 1,950 |
| | | | | | | | | | | | | | | | |
| **Taxes** | | | | | | | | | | | | | | | |
| Crude | | | | | 1,818 | | | | | 1,787 | | | | 1,757 | 5,362 |
| Gas | 533 | | | | | 438 | | | | 432 | | | | | 870 |
| NGL | 175 | | | | | 153 | | | | 153 | | | | | 306 |
| | | | | | | | | | | | | | | | |
| G&P | 11,348 | | | | | 1,672 | | | | 9,206 | | | | | 10,878 |
| **Total Receipts/Collections** | 16,250 | - | 2,290 | - | (1,818) | 46,996 | 2,290 | - | - | 11,807 | 27,461 | - | - | 22,992 | 112,018 |
| | | | | | | | | | | | | | | | |
| Royalty | | | 6,252 | | | | 3,614 | | | | 3,479 | | | | 13,345 |
| | | | | | | | | | | | | | | | |
| **Pre-Petition Payables** | | | | | | | | | | | | | | | |
| Wage Petition | | 25,662 | | | | | | | | | | | | | 25,662 |
| Utility Petition | | 1,125 | | | | | | | | | | | | | 1,125 |
| LOE Petition - LOE | | 26,588 | | | | | | | | | | | | | 26,588 |
| LOE Petition - Gathering & Marketing | | 7,663 | | | | | | | | | | | | | 7,663 |
| Royalty Petition | | 136 | | | | | | | | | | | | | 136 |
| | | | | | | | | | | | | | | | |
| **Personnel costs** | | | | | | | | | | | | | | | |
| Payroll | | 15,012 | | 34,635 | | 34,635 | | 34,635 | | | 34,635 | | 34,635 | | 188,186 |
| Contract Vendors | | 8,000 | | 17,624 | | 23,750 | | 17,624 | | | 23,750 | | 17,624 | | 108,371 |
| | | | | | | | | | | | | | | | |
| **Office and other** | | | | | | | | | | | | | | | |
| Office, equipment and IT | | 4,400 | | 1,100 | | | 4,400 | | 1,100 | | 4,400 | | 1,100 | | 16,500 |
| Software/licenses | | 3,000 | | | | | 3,000 | | | | 3,000 | | | | 9,000 |
| Travel/staff expenses | | | | | 2,000 | | 2,000 | 9,000 | 7,000 | | 3,000 | 2,000 | | | 37,000 |
| Legal/administrative | | | 2,000 | | | | 2,000 | | | | 2,000 | | | | 6,000 |
| Insurance | | | | | 1,380 | | | | | 1,380 | | | | 1,380 | 4,140 |
| Truck Payment | | 1,093 | | | | | 1,093 | | | | 1,093 | | | | 3,278 |
| | | | | | | | | | | | | | | | |
| **Field level** | | | | | | | | | | | | | | | |
| Pumper | | 3,500 | | | | 3,500 | | | | | 3,500 | | | 3,500 | 10,500 |
| Field level insurance | | | | | 5,323 | | | | | 5,323 | | | | 5,323 | 15,970 |
| Compressor | | 2,687 | | | | | 2,687 | | | | 2,687 | | | | 8,062 |
| Materials | | 10,000 | | | | | 10,000 | | | | 10,000 | | | | 30,000 |
| Water handling | | 18,544 | | | | | 18,544 | | | | 18,544 | | | | 55,632 |
| | | | | | | | | | | | | | | | |
| **Finish completion - CAPEX** | | | | | | | | | | | | | | | |
| KOTH hookup | | | | | | 209,848 | 49,150 | 49,150 | 49,150 | 49,150 | | | | | 406,448 |
| **Operational cash flow** | 16,250 | (127,409) | (5,962) | (53,358) | (10,521) | (16,889) | (261,895) | (110,408) | (57,250) | (47,047) | (131,777) | (2,000) | (53,358) | 16,289 | (861,587) |
| | | | | | | | | | | | | | | | |
| **Financing Cash flows** | | | | | | | | | | | | | | | |
| Draws | | 400,000 | | | | 550,000 | | | | 410,000 | | | | | 1,360,000 |
| Interest Pmt | | | | | | | | | | | | | | 22,132 | 22,132 |
| | | | | | | | | | | | | | | | |
| **Process costs** | | | | | | | | | | | | | | | |
| United States Trustee | | | | | | | | | | | | | | 6,500 | 6,500 |
| Counsel - lenders | | | | | | 50,000 | | | | | | | | | 50,000 |
| Counsel - debtors | | 50,000 | | | | | 54,000 | | | | 56,000 | | | 40,000 | 200,000 |
| Financial advisory costs | | 50,000 | | | | | 54,000 | | | | 56,000 | | | 65,000 | 225,000 |
| Independent directors | | | | 2,500 | 2,500 | | | 2,500 | | | | 2,500 | | 3,000 | 13,000 |
| **Total cash flow** | 16,250 | 172,591 | (5,962) | (55,858) | (13,021) | 483,111 | (369,895) | (112,908) | (57,250) | 362,953 | (243,777) | (4,500) | (53,358) | (120,343) | (18,218) |
| | | | | | | | | | | | | | | | |
| **Cash balance** | | | | | | | | | | | | | | | |
| Beginning | $4,057 | 20,307 | 192,898 | 186,936 | 131,078 | 118,057 | 601,167 | 231,272 | 118,364 | 61,114 | 424,067 | 180,290 | 175,790 | 122,432 | |
| Change | 16,250 | 172,591 | (5,962) | (55,858) | (13,021) | 483,111 | (369,895) | (112,908) | (57,250) | 362,953 | (243,777) | (4,500) | (53,358) | (120,343) | |
| Ending | 20,307 | 192,898 | 186,936 | 131,078 | 118,057 | 601,167 | 231,272 | 118,364 | 61,114 | 424,067 | 180,290 | 175,790 | 122,432 | 2,089 | 2,089 |

| | |
|---|---|
| Emergency Approval | $ 400,000 |
| Funding estimate | $ 1,360,000 |
| Funding estimate (10% contingency) | $ 1,496,000 |