IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| **BRAHMAN RESOURCE PARTNERS,** | § | Case No. 20-33697 (DRJ) |
| **LLC,** *et al.*[1] | § | |
| | § | |
| *Debtors.* | § | Relates to Dkt. 163 |

### OBJECTION OF BRAHMAN DIP LENDER, LLC TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS APPLICATION TO EMPLOY STOUT RISIUS ROSS, LLC, AS FINANCIAL ADVISOR <u>*NUNC PRO TUNC*</u> TO SEPTEMBER 22, 2020

Brahman DIP Lender, LLC ("DIP Lender"), a creditor and party in interest, files this Objection to the *Application of the Official Committee of Unsecured Creditors to Employ Stout Risius Ross, LLC as Financial Advisor Nunc Pro Tunc to September 22, 2020* [Dkt. 163] (the "**Application**") and respectfully states as follows:

#### Summary of Relief Sought

1. DIP Lender objects to the Application because the scope of services outlined in the application is inconsistent with the role of the Committee in this case and reflects that the primary purpose of the proposed employment of Stout Risius Ross LLC ( "Applicant") is to serve the interest of the mineral lienholders in an effort to increase the value of their secured claims. Even had that effort been successful, it would have conferred no benefit on the unsecured creditors. In fact, under the circumstances of this case, there is a substantial question whether the Committee needs a financial advisor since the case was filed in order to conduct a sale of substantially all of

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Brahman Resource Partners, LLC (7253); and BRP Vista Grande, LLC (1481). The Debtors' service address is 8900 Eastloch Dr., Suite 235, Spring, Texas 77379.

OBJECTION OF BRAHMAN DIP LENDER LLC TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR FOR THE COMMITTEE *NUNC PRO TUNC* TO SEPTEMBER 22, 2020

Debtors' assets, and that sale has now been approved. Accordingly, the Application should be denied.

## Background

2. On July 26, 2020 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"). The Debtors continue to operate their businesses as debtors in possession pursuant to section 1107 and 1108 of the Bankruptcy Code. These chapter 11 cases (the "**Cases**") have been consolidated for procedural purposes only and are being jointly administered under Bankruptcy Rule 1015(b) [Dkt. 19].

*3.* On August 27, 2020, the court entered its *Order (I) Authorizing the Employment And Retention Of Energynet.Com, LLC as Oil and Gas Broker and Auctioneer for the Debtors; (II) Establishing Bidding Procedures And Notice Procedures; (III) Scheduling a Sale Hearing; and (IV) Granting Related Relief* [Dkt 101] in which the court approved a bidding process to sell substantially all of the assets of the Debtors. Essentially, the only excluded assets were cash, cash equivalents, accounts receivable and causes of action.

4. On September 14, 2020, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**") under section 1102(1) and 1102(b)(1) of the Bankruptcy Code [Dkt. 128]. No request has been made for the appointment of a trustee or an examiner.

5. On October 12, 2020, the Committee filed its *Application of the Official Committee of Unsecured Creditors to Employ Stout Risius Ross, LLC as Financial Advisor Nunc Pro Tunc to September 22, 2020* [Dkt. 163].

6. On October 19, 2020 the court entered its *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of the Debtor Outside the Ordinary Course of*

OBJECTION OF BRAHMAN DIP LENDER LLC TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR FOR THE COMMITTEE *NUNC PRO TUNC* TO SEPTEMBER 22, 2020

– page 2 of 7

ClarkHill\D2456\409821\261076054.v2-10/21/20

*Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Dkt. 190] in which the court approved the sale of substantially all of the Debtor's assets.

## Jurisdiction and Venue

7. The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

8. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## Objection and Relief Requested

9. The proposed scope of services in the Application includes:

    a. Advise on the Debtor's sale process.
    b. Determination of asset and liquidation valuations.
    c. Financial advisory services including the preparation of a liquidation analysis, and a monthly analysis of the Debtor's financial information (including analysis of significant changes financially, operationally or otherwise).
    d. Analysis of the Debtor's general financial and business condition, including an analysis of current assets and liabilities, PP&E and other "soft" assets.
    e. Review and analysis of the reporting regarding cash collateral and any debtor-in-possession financing arrangements and budgets.
    f. Review and critique of the Debtor's financial projections and assumptions.
    g. Attend Unsecured Creditors' Committee meetings to discuss Stout's analyses.
    h. Analysis of filings required by the Bankruptcy Court or the Office of the United States Trustee, including, but not limited to, schedules of assets and liabilities, statements of financial affairs and monthly operating reports.
    i. Review of the Debtor's financial information, including, but not limited to, analyses of cash receipts and disbursements, financial statement items and proposed transactions for which Bankruptcy Court approval is sought.
    j. Analysis of assumption and rejection issues regarding executory contracts and leases.

10. While this scope of services may be appropriate in a case involving an ongoing reorganization, it is far too broad where the Debtor intended to, and now has, sold all of its tangible

OBJECTION OF BRAHMAN DIP LENDER LLC TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR FOR THE COMMITTEE *NUNC PRO TUNC* TO SEPTEMBER 22, 2020

– page 3 of 7

ClarkHill\D2456\409821\261076054.v2-10/21/20

assets in the sales process. Moreover, the sales process, itself, which had been approved by the Court before Applicant was engaged by the Committee, served only to benefit the secured creditors since there was no prospect that the Debtors' properties could be sold at a value in excess of the liens on the property.

11. In fact, there is a substantial question whether the Committee requires any financial advisory services, particularly now that the Debtor's assets have been sold.

12. More troubling is the fact that, prior to the sale, Applicant primarily provided services with the objective of increasing the value of the liens of mineral lienholders by investigating and testifying against the Debtors' sales process previously approved by the court, services which provided no benefit to the unsecured creditors.

13. The Committee consists of creditors who hold mineral liens under Chapter 56 of the Texas Property Code. Those mineral liens, estimated to exceed $4 million, were subordinated to the liens granted the DIP Lender to secure a line of credit of $1.5 million, but the holders of mineral liens, who have liens on the King of the Hill well and the related lease, were granted subordinate liens on all of the Debtors' mineral leases as adequate protection.[2]

14. At the time the Committee was formed, it was unknown whether the liens of the Committee members had any value because the sales process had not been concluded. Any bid in excess of the liens of the DIP Lender would inure to the benefit of the mineral lienholders *on their secured claims*, but a higher sales price would not benefit the unsecured creditors.

---

[2] Final Order (I) Authorizing Use of Cash Collateral; (II) Authorizing the Debtors To Obtain Secured Post-Petition Financing; (III) Granting Liens and Superpriority Claims; (IV) Granting Adequate Protection; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief.

OBJECTION OF BRAHMAN DIP LENDER LLC TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR FOR THE COMMITTEE *NUNC PRO TUNC* TO SEPTEMBER 22, 2020

– page 4 of 7

ClarkHill\D2456\409821\261076054.v2-10/21/20

15. As a result, the members of the Committee held potentially conflicting interests - interests as lienholders and interest as unsecured creditors. Applicant has extensive experience in bankruptcy matters and has the sophistication to understand the difference and to limit its services to those needed by the unsecured creditors. But Applicant has not so limited its services.

16. On October 14, after the Debtor announced that DIP Lender was the winning bidder, the Committee filed an objection to the proposed sale.[3] In that objection, the Committee alleged that the Debtor failed to provide adequate information to prospective bidders and arbitrarily excluded prospective bidders. The objection alleged that the data room set up by EnergyNet.com did not contain sufficient production information for prospective bidders. Upon information and belief, the allegations in the Objection regarding the lack of data in the data room were based on information provided by Applicant.

17. After the objection was filed, Debtor's counsel advised Committee counsel that most of the information he claimed was missing was, in fact, in the data room. As for the allegation that the Debtor "would not permit a former consultant to participate in the sales process", what the Committee failed to disclose was that the "former consultant" was the chair of the Creditors Committee who was given access, but who had no interest in bidding.

18. In an apparent attempt to avoid embarrassment, the Committee filed an amended objection, omitting most of the factual allegations in the initial objection but still contending that there was insufficient production information in the data room. Mr. Baumgartner, Applicant's representative, testified as to the missing data but, upon cross-examination, was shown production information in the data room that he had testified was missing. Mr. Baumgartner, who was not

---

[3] *The Official Committee of Unsecured Creditors' Objection to the Auction [Dkt 176]*

OBJECTION OF BRAHMAN DIP LENDER LLC TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR FOR THE COMMITTEE *NUNC PRO TUNC* TO SEPTEMBER 22, 2020

– page 5 of 7

ClarkHill\D2456\409821\261076054.v2-10/21/20

employed as an expert, also attempted to testify that, if the sale were delayed, it was his opinion that a higher bidder could emerge.

19. The court approved the sale of the Debtor's assets to the DIP Lender over the objection of the Committee; but even had Applicant succeeded in his efforts to delay the sale, and even if a higher bidder would have come forward, that would only have benefitted the *secured claims of mineral lienholders* by "putting them in the money". The unsecured creditors would not have benefitted.

20. Moreover, Debtor did not file its Application to employ Applicant until October 12, a month after the Committee was formed. By then, the Committee's proposed professionals had reportedly incurred fees of over $46,000, presumably in their effort to find flaws in the sales process and to derail it.

21. The Final DIP Order contains a "carve out" for certain professional fees which would potentially include the fees of professionals for the Unsecured Creditors' Committee. The mineral lienholders did not seek the appointment of a mineral lienholders committee. DIP Lender did not agree to bear the cost of Applicant representing the interests of the mineral lienholders.

22. The causes of action of the estate, including Chapter 5 causes of action, were not sold by the Debtor. To the extent that the fees of Applicant are not within the Carve Out and there are funds in the estate in the future from the recovery from any causes of actions, the unsecured creditors should not have to bear the cost of Applicant representing the interests of the mineral lienholders.

WHEREFORE, premises considered, DIP Lender prays the Court deny the Committee's Application.

OBJECTION OF BRAHMAN DIP LENDER LLC TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR FOR THE COMMITTEE *NUNC PRO TUNC* TO SEPTEMBER 22, 2020

– page 6 of 7

ClarkHill\D2456\409821\261076054.v2-10/21/20

Respectfully submitted,

　　/s/ *Stephen A. Roberts*
Stephen A. Roberts
**CLARK HILL STRASBURGER**
720 Brazos, Suite 700
Austin, Texas 78701
512.499.3624
512.499.3660 (Facsimile)
sroberts@clarkhill.com

**Attorneys for Brahman DIP Lender, LLC**

## CERTIFICATE OF SERVICE

　　The undersigned hereby certifies that a true and correct copy of this Objection was served via CM/ECF to all parties entitled to such notice on this the 21st day of October 2020.

　　*/s/ Stephen A. Roberts*
Stephen A. Roberts

OBJECTION OF BRAHMAN DIP LENDER LLC TO THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR FOR THE COMMITTEE *NUNC PRO TUNC* TO SEPTEMBER 22, 2020
– page 7 of 7

ClarkHill\D2456\409821\261076054.v2-10/21/20